Todd M. Friedman (216752)
Adrian R. Bacon (280332)
Meghan E. George (274525)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE DISTANCE LEARNING COMPANY,** Individually and on behalf of all others similarly situated, | )Case No. )<br>) |
| Plaintiff, | )**CLASS ACTION COMPLAINT FOR** )**VIOLATIONS OF THE SHERMAN** )**ACT, CARTWRIGHT ACT,** )**BUSINESS & PROFESSIONS CODE,** )**AND UNFAIR COMPETITION LAW** |
| vs. | )**FOR INJUNCTIVE RELIEF AND** )**CIVIL PENALTIES** |
| **THE MAYNARD GROUP; CHONG FONTES AND ACREE LLC; STEVEN KIM LOW; NO BRAINER TRAFFIC SCHOOL LLC; TRAFFIC BIZ; BETHANY SUSAN MAYNARD; DERICK GENE MAYNARD; DOES 1-100 inclusive,** | ) )**JURY REQUESTED** ) ) ) ) |
| Defendant. | ) ) ) ) ) ) |

Complaint - 1

# I. INTRODUCTION

1.      Plaintiff DISTANCE LEARNING COMPANY ("DLC" or "Plaintiff") brings this action against Defendants under Section 1-2 of the Sherman Act, 15 U.S.C. § 2, The Cartwright Act, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq.

2.      This case is about the Defendants strategy to suppress competition and maintain control in the field of online traffic schools.

3.      Defendants have manufactured a scheme of anticompetitive conduct to maintain their unfair monopoly in this education field.

4.      Defendants' conduct has the sole goal of improperly preventing consumers from accessing competitors' online traffic schools. The illegal anticompetitive scheme they have concocted has effectively forced an unwitting host of consumers into using only their products, and has denied Plaintiff and the class members the benefit of a competitive marketplace.

5.      Plaintiff brings this action as a class action on behalf of competitive traffic schools/operators who have operated in California over the last four years.

6.      Plaintiff, on behalf of himself and the class defined herein, sues for Defendants' violation of federal and state antitrust laws as alleged herein, and seeks treble damages, injunctive relief, and attorney's fees and costs of suit.

## II. JURISDICTION & VENUE

7.      The action in this complaint arises under a federal question, namely 15 U.S.C. § 1337 (commerce and antitrust regulation), and 28 U.S.C. §1331, as this action arises under Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 16 of the Clayton Act, 15 USC §26.

8.      The main events giving rise to this action occurred within this district, and venue is therefore proper pursuant to 28 U.S.C. § 1391(b)(2).

///

///

### III. PARTIES

9.     Plaintiff, DLC, is a company engaged in the business of online driver's education and traffic schools, incorporated in the state of California, and doing business in this District.

10.    At all relevant times herein, Defendant THE MAYNARD GROUP is a company engaged in the business of online traffic school. Defendant was incorporated in California, and is doing business in this District.

11.    At all relevant times herein, Defendant BETHANY SUSAN MAYNARD was an individual engaged in the business of owning/operating online traffic school(s). Defendant is an individual residing in California, and is operating a business in this District.

12.    At all relevant times herein, Defendant DERRICK GENE MAYNARD was an individual engaged in the business of owning/operating online traffic school(s). Defendant is an individual residing in California, and is operating a business in this District.

13.    At all relevant times herein, Defendant CHONG FONTES AND ACREE LLC. was a company engaged in the business of online traffic school. Defendant was incorporated in California, and is doing business in this District.

14.    At all relevant times herein, Defendant STEVEN KIM LOW was an individual engaged in the business of owning/operating online traffic school(s). Defendant is an individual residing in California, and is operating a business in this District.

15.    At all relevant times herein, Defendant TRAFFIC BIZ was a company engaged in the business of online traffic school. Defendant was incorporated in California, and is doing business in this District.

16.    At all relevant times herein, Defendant NO BRAINER TRAFFIC SCHOOL LLC was a company engaged in the business of online traffic school. Defendant was incorporated in California, and is doing business in this District.

17.     The above named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants."   The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

18.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## IV. CLASS ACTION ALLEGATIONS

19.     Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following class:

> *All owners/operators of online traffic schools, other than the Defendants, who currently operate, or have operated, in California at any time during the last four years.*

20.     Excluded from the Class are Defendants and their officers and directors, and the judicial officer(s) presiding over this action and the members of his/her/their immediate family and judicial staff.

21.     The Class is readily ascertainable because records of the relevant competitors, owners/operators of traffic schools exists, and is maintained by the Department of Motor Vehicle, pursuant to state law.

22.   Due to the nature of the trade and commerce involved, Plaintiff believes that the Class has many thousands of members, the exact number and their identities being known to Defendants and their co-conspirators, as well as to the State of California who can easily ascertain their identities.

23.   Plaintiff's claims are typical of the claims of the members of the Class.

24.   Plaintiff will fairly and adequately protect the interests of the members of the Class.

25.   Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class.

26.    There are questions of law and fact common to the members of the Class, including, but not limited to, the following:

      a.   Whether Defendants conspired as alleged herein;

      b.   Whether the conspiracy was implemented in the areas in which the class members operate;

      c.   Whether the conspiracy harmed competition as alleged herein;

      d.   Whether the competitive harm from the conspiracy substantially outweighs any competitive benefits;

      e.   Whether the nature of the conspiracy unlawfully restricted trade, as alleged herein;

      f.   Whether the pricing of traffic schools was inflated as a result of the conspiracy, as alleged herein;

      g.   The appropriate class-wide measures of damages.

27.   Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation to represent itself and the Class.

28.   Questions of law or fact that are common to the members of the Class predominate over any questions affecting only individual members of the Class.

29.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual

members of the Class would impose heavy burdens on the court and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. Absent a class action, it would not be feasible for the vast majority of the members of the Class to seek redress for the violations of law alleged herein

## V. FACTUAL ALLEGATIONS
### <u>Background</u>

30.   Defendants are engaging in an illegal scheme to monopolize the traffic school marketplace, and to control the marketplace pricing for traffic schools in California. This scheme is intentionally manufactured to prevent consumers from finding and utilizing or obtaining access to the less expensive traffic school products.

31.   Plaintiff is the owner of TrafficSchoolOnline.Com, an online traffic school fully approved by State DMVs, courts, and insurance companies.

32.   Plaintiff charges $19.95 for its basic course, with free same day processing, and $5.95 for transmittal of the completion certificate to the State DMV. The total for the full program is $25.90.

33.   The California DMV maintains a list of driving schools, both online and in hard copy that are distributed in traffic courts. California State Law requires that online home study traffic school programs also be included on the list through the DMV authorized program.

34.   The schools that appear on the list need not spend any money on advertising or other marketing costs, because the state law requires that the DMV add them to the list of approved traffic schools.

///

**Defendants' Scheme**

35.  The Defendants in this case are owners and operators of online traffic schools in California.

36.  The Defendants have, and are currently, engaging in an illegal scheme to monopolize the marketplace for online traffic schools, and are colluding with one another to drive lower priced traffic schools out of the marketplace in order to control the price.

37.  Specifically, the DMV allows any company to pay the $450 application fee, and set up a new traffic schools. Schools are required to have a course curriculum, place of business, operator, instructor, and a bond.

38.  Further, the current DMV statute/regulations have a "loophole" that is being abused by the Defendants, which prevents the DMV from enforcing the use of a legitimate business office by the multi-school owning Defendants.

39.  These Defendants are thus able to register hundreds of school to operate out of the same single office space, which oftentimes does not even have a sign or appropriate business operating hours.

40.  As a result, Defendants have together colluded to set up as many "different" schools as possible, in order to flood the DMV's list with many schools which are all operated by the same few owner/operators. These schools, in many cases, have different names, but utilize the exact same website, place of business, curriculum, and instructor.

41.  Plaintiff is informed and believes that approximately 500 of these illegitimate "schools" have been set up since January 2019 alone.

42.  Defendant THE MAYNARD GROUP, and its operators, Defendants Bethany Susan Maynard and Derrick Gene Maynard, operate approximately 1,500 of the 2,790 of the DMV's licensed traffic schools, or 47% of the licensed traffic schools.

43.    On a single day in January, 2019, Defendants THE MAYNARD GROUP, BETHANY SUSAN MAYNARD, and DERRICK GENE MAYNARD, added 501 schools to the registered list of schools.

44.    Defendant DERRICK MAYNARD admitted to the local press that "My mentality was, add as many as I can to wash him out," said Derick Maynard, of Bakersfield, owner of Shortest Course on List and other schools that focus on how quickly the course may be completed." https://www.sacbee.com/news/politics-government/the-state-worker/article229826589.html

45.    Defendants CHONG FONTES and ACREE LLC, have registered 208 "different" schools on the DMV's list, which all share the same "business" address and operations. Their pricing is set at $29.95 for all of the 208 schools.

46.    Defendants NO BRAINER TRAFFIC SCHOOL LLC, and STEVEN KIM LOW have registered 200 "different" schools on the DMV's list, which all share the same business address and operations. Their pricing is set at $29.95 for all of the 200 schools.

47.    Defendant TRAFFIC BIZ has registered 171 "different" schools on the DMV's list which all share the same business address and operations. Their pricing is set at $29.95.

48.    Overall, the MAYNARD GROUP (and Defendants DERRICK GENE MAYNARD AND BETHANY SUSAN MAYNARD), CHONG FONTES AND ACREE, LLC, NO BRAINER TRAFFIC SCHOOL LLC AND STEVEN KIM LOW, and TRAFFIC BIZ, operate 1845 schools out of the DMV's total 2896 schools.

49.    Plaintiff is further informed and believes that the Defendants use fake business addresses to satisfy the DMV requirements, but are not actually in operation at those locations at all.

50.    Because of state law, the DMV list is not alphabetized and auto-rotates every time a user access the website.

51.   When a consumer accesses the DMV website, a list of several dozen traffic schools is presented in randomized descending order.

52.   Because of normal consumer tendencies, including the fact that consumers are not likely at all to scroll through and research all 2,700 plus traffic schools to find a suitable and competitive option, especially given the relatively low price point of these traffic school programs, schools listed at or near the top of these randomized lists are the most likely to be selected by a consumer.

53.   Defendants' intention in creating thousands of alter-ego proxy schools is to increase their likelihood of appearing at or near the top of the randomized list, thereby bettering their chances of being selected by a consumer, not through any legitimate competitive advantage, but through sheer volume and luck of the randomized draw.

54.   Such practice gives these unscrupulous Defendants an advantage over other legitimate, and lower priced, traffic schools, because consumers are more likely to be directed to the Defendants' traffic schools on each occasion accessing the website.

55.   Further, this scheme is intended to, and results in, consumers giving more credibility to traffic schools that do not meet the statutory requirements of proper licensure, and offer no better services than class members. The average consumer would assume that a business that appears on the list more frequently seem to be the authority among traffic schools, which is certainly not the case in fact.

## Defendants Price Collusion Scheme

56.   In 2013, the most recent figures that are available to Plaintiff, over one million people took traffic school in California.

57.   The industry average price of traffic school is estimated to be approximately $17.00/per person.

58.   However, the four dominating multi-school operators, i.e. the Defendants named herein, colluded with one another through a series of discussions, to flood

the online DMV traffic school market with an overabundance of duplicative alter ego proxy businesses, in order to artificially increase their market share.

59.   Pursuant to Defendant's scheme, Defendants also agreed and colluded to raise the prices of each of their "schools" in unison, to approximately $7.00 higher than the industry average of $17.00/per person, a price increase to consumers of over 41%.

60.   Were it the case that Defendants did not undertake these efforts, their joint market share would be approximately 1% of the market.  However, after artificially creating thousands of proxy businesses to flood the market, their collective market share increased to over 75% of the market.

61.   The Defendants in this case are engaged in such conduct for the sole purpose of attempting to collectively monopolize 75% (or more) of the market share.

62.   Thereafter, pursuant to the collusive scheme agreed upon by Defendants, prices offered by the Defendants would increase, as described above.  Consumers would be unlikely to notice the change, or be bothered to care, because while the price increase was astronomical viewed in perspective to its 41% increase, paying an additional $7 is a minor additional expense for the average consumer that they are unlikely to notice.

63.   Defendants were able to both gouge consumers and prevent law-abiding legitimate competitors, such as Plaintiff, from being exposed to consumers, which allowed Defendants to perpetuate this scheme.

64.   Further, all of these Defendants collude to raise their prices at the same time, and to flood the marketplace with more fake traffic schools at the same time, with those same increased prices.

65.   Such conduct has the overall effect of reducing the likelihood that consumers are able to find the less expensive options, and are instead directed to the Defendants, who have all colluded to control pricing in the marketplace and elevate it to above-market rates.

## COUNT I: VIOLATION OF
## SHERMAN ACT, §1; UNLAWFUL COLLUSION

66.   Plaintiff reincorporates by reference all of the preceding paragraphs.

67.   Plaintiff, and class members, and Defendants are direct competitors for consumers seeking online traffic school in California.

68.   Defendants entered into an agreement to flood the marketplace with fake/fraudulent/duplicate traffic schools at the same time, and to simultaneously raise the prices of those traffic schools across the board, to edge out and distract consumers from any lower priced traffic schools.

69.   Defendants agreement is per se unlawful under Section 1 of the Sherman Act, 15 U.S.C. §1. No detailed analysis is required to determine the anti-competitive nature of this agreement.

70.   This scheme and agreement between the Defendants is also an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman Act.

71.   The sole intent of the agreement between the Defendants is to control the price in the marketplace, and to make it more difficult for consumers to find competitive pricing from Plaintiff and the class members.

72.   It is clear that this agreement between the Defendants would have an anti-competitive effect on consumers and harm the competitive marketplace, restricting access to an unfettered choice for consumers.

73.   It is clear that the agreement between the Defendants is also an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman Act. The result of the agreement is to restrain competition and the agreement has no legitimate pro-competitive justification.

74.   For the purpose of forming or effectuating the alleged agreement, understanding, or conspiracy, Defendants and co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, conduct, and practices discussed herein, and the following, among others:

a. Colluding to flood the marketplace with false/duplicate/fraudulent traffic schools at the same time;

b. Colluding to raise the prices of all of these false/duplicate/fraudulent traffic schools to the same increase price

75.   The combination and conspiracy has had, among other things, the following effects:

a. Suppressed competition between Defendants and Plaintiff and class members, for consumers seeking online traffic schools;

b. Resulted in loss of customers and profits to Plaintiff and class members, due to the unlawful nature of the scheme;

c. Unfairly restricted the choice of consumers in the marketplace to a select few owners/operators who have all colluded to increase prices

76.   Consumers and competitors in the marketplace were injured and will continue to be injured in their business and property by fewer choices and opportunities to which they would have had access as a direct and indirect result of Defendant and their co-conspirators actions.

77.   Plaintiff is entitled to an injunction against the Defendants preventing and restraining the violations alleged herein, and to enjoin them from engaging in this conduct in the future.

## COUNT II:
## VIOLATION OF SHERMAN ACT, §2: UNLAWFUL MONOPOLIZATION

78.   Plaintiff reincorporates by reference all of the preceding paragraphs.

79.   Defendant's conduct constitutes the intentional and unlawful maintenance of monopoly power in the relevant product market, as alleged in Section 2 of the Sherman Act, 15 U.S.C. §2.

80.    For the purpose of maintaining their monopoly power, the Defendants committed numerous acts, including;

    a. Carrying out a policy by which Defendants create duplicate and fake traffic schools, and apply to add them to the DMV's list, in order to flood the marketplace with these duplicate/fake traffic schools to drive consumers to the same few owners/operators.

    b. Utilizing the same websites, business addresses, owners, and operators to create these fake/duplicate schools, which are all driving consumers to the same ultimate online hub;

    c. Penalizing consumers by colluding with each of the other Defendants to flood the marketplace with these "new" fake/duplicate traffic schools at the same time, to drive consumers away from finding a more inexpensive product;

    d. Penalizing consumers by colluding with each of the other Defendants to raise prices of online traffic school at the same time, to prevent consumers from accessing or finding a more inexpensive product;

81.    Defendants have excluded competitors, including Plaintiff, from the relevant product market, and has deprived consumers of the benefits of competition among online traffic school products.

82.    Defendants do not have a legitimate business purpose for any of their anticompetitive conduct. Any claimed procompetitive benefit is disingenuous, in light of the conduct alleged herein which is inconsistent to any marketplace benefit.

83.    Defendant's conduct does not result in an ability for Defendants to reduce costs to consumers; in fact, their conduct is intended to create the oppose effect.

84.   Defendant's unlawful monopolization has injured competition in the online traffic school market field, suppressed sales for Plaintiff and the products of other competitors, and diminished future sales opportunity for Plaintiff.

85.   Defendants' overall course of conduct has and will continue to deny consumers from competitive prices in the marketplace, harm innovation associated with the products offered the marketplace, and has harmed consumers of their ability to unfettered access of competitive marketplace offerings.

## COUNT III-
## VIOLATION OF SHERMAN ACT § 2: ATTEMPTED MONOPOLIZATION

86.   Plaintiff realleges and incorporates all paragraphs herein by reference.

87.   Defendants acted with a specific intent to monopolize and destroy competition in the online traffic school marketplace. Defendants devised and implemented a plan to systematically eliminate competition in this marketplace.

88.   Defendants willfully engaged in a course of exclusionary conduct to obtain a monopoly in the online traffic school marketplace, including:

    a. Carrying out a policy by which Defendants create duplicate and fake traffic schools, and apply to add them to the DMV's list, in order to flood the marketplace with these duplicate/fake traffic schools to drive consumers to the same few owners/operators.

    b. Utilizing the same websites, business addresses, owners, and operators to create these fake/duplicate schools, which are all driving consumers to the same ultimate online hub;

    c. Penalizing consumers by colluding with each of the other Defendants to flood the marketplace with these "new" fake/duplicate traffic schools at the same time, to drive consumers away from finding a more inexpensive product;

     d. Penalizing consumers by colluding with each of the other Defendants to raise prices of online traffic school at the same time, to prevent consumers from accessing or finding a more inexpensive product;

89.    Defendants have excluded competitors, including Plaintiff, from the relevant product market, and has deprived consumers of the benefits of competition among online traffic school products.

90.    Defendants do not have a legitimate business purpose for any of their anticompetitive conduct. Any claimed procompetitive benefit is disingenuous, in light of the conduct alleged herein which is inconsistent to any marketplace benefit.

91.    Defendant's conduct does not result in an ability for Defendants to reduce costs to consumers; in fact, their conduct is intended to create the oppose effect.

92.    Defendant's unlawful monopolization has injured competition in the online traffic school market field, suppressed sales for Plaintiff and the products of other competitors, and diminished future sales opportunity for Plaintiff.

93.    Defendants' overall course of conduct has and will continue to deny consumers from competitive prices in the marketplace, harm innovation associated with the products offered the marketplace, and has harmed consumers of their ability to unfettered access of competitive marketplace offerings.

## COUNT IV:

## VIOLATION OF SECTION 17200 OF THE CAL. BUS. & PROF. CODE

94.    Plaintiff realleges and incorporates all paragraphs mentioned herein, by reference.

95.    Defendants have committed acts of unfair competition within the meaning of Section 17200 of the Cal. Bus. & Prof. Code, the California Unfair Competition Law ("UCL"), by engaging in unlawful and unfair conduct. Defendant's unlawful and unfair conduct have harmed competition in California and elsewhere threaten significant harm to competition in the future. Defendants conduct is a direct and proximate cause of damages to California consumers, and Plaintiff.

96.     Defendants have engaged in unlawful conduct pursuant to business activity in violation of the UCL. As set forth in full above, Defendants' conduct violates Section 2 of the Sherman Act.

97.     Defendants have engaged in unfair conduct within the meaning of UCL by:

    a. Carrying out a policy by which Defendants create duplicate and fake traffic schools, and apply to add them to the DMV's list, in order to flood the marketplace with these duplicate/fake traffic schools to drive consumers to the same few owners/operators.

    b. Utilizing the same websites, business addresses, owners, and operators to create these fake/duplicate schools, which are all driving consumers to the same ultimate online hub;

    c. Penalizing consumers by colluding with each of the other Defendants to flood the marketplace with these "new" fake/duplicate traffic schools at the same time, to drive consumers away from finding a more inexpensive product;

    d. Penalizing consumers by colluding with each of the other Defendants to raise prices of online traffic school at the same time, to prevent consumers from accessing or finding a more inexpensive product;

98.     Defendants' conduct has significantly harmed competition in the market for online traffic school and threatens to continue to harm in the same way unless it is restrained. As stated herein, Plaintiff is informed and believes that approximately 500 online traffic schools have been approved as a part of this scheme since January 2019. Defendants are likely to continue this conduct and scheme indefinitely.

99.     Plaintiff has suffered injury    and are threatened with continued harm as a direct, proximate, and foreseeable result of Defendants' unlawful and unfair activity. Plaintiff faces the threat of increased operating costs to overcome the loss of customers or potential customers as a result of Defendants' scheme. Plaintiff

also faces continued loss of customers and potential customers, and uncertainty in Plaintiff's business endeavors as a result of this unlawful scheme and conduct.

100.    California consumers have been harmed and are threatened with continued harm as a direct, proximate, and foreseeable result of Defendant's unlawful and unfair activity. If Defendants' conduct is not restrained, consumers will either be locked into more expensive and/or lower quality online traffic schools, without the benefit of an unfettered marketplace to choose from.

101.    Plaintiff is seeking a preliminary and permanent injunction to prevent Defendants from interfering with Plaintiff's prospective economic relations and from damaging competition in the relevant product markets due to its anticompetitive conduct.

102.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

## UNFAIR

103.    California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits

attributable to such conduct.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

104.  In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

105.  Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Defendant's conduct. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Sub-Class.

106.  Moreover, Defendants' conduct as alleged herein solely benefits Defendants while providing no benefit of any kind to any consumer.   Such deception utilized by Defendants convinced Plaintiff to lose customers and be deprived of the benefit of an unfettered marketplace. Defendants unfairly profited from their scheme. Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not outweighed by any countervailing benefits to consumers.

107.  Finally, the injury suffered by Plaintiff and members of the Sub-Class is not an injury that these consumers could reasonably have avoided.  Defendant took advantage of Defendant's position of perceived power in order to deprive Plaintiff and the Class members, as well as consumers, of the benefit of a competitive marketplace.   Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these class members could reasonably have avoided.

108.  Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

109.  California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

110.  The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

111.  Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Plaintiff and the class members were unaware of this scheme, and Defendants' control of the price of products in the marketplace, and suffered damages as a result of their collusion and conduct.  Plaintiff's reliance upon Defendant's deceptive statements and representations that they were operating legitimate independent traffic schools (a falsity) is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public, including the consumers seeking to avail themselves of Defendants' products.

112.  As explained above, Defendant deceived Plaintiff and other Class Members by representing  that they were operating legitimate traffic schools, when they were merely attempting to flood the marketplace with fake schools to control the pricing and to control the marketplace.

113.  Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

114.  California Business and Professions Code Section 17200, et seq. prohibits

"any unlawful…business act or practice."

115.  Defendant deceived Plaintiff and other Class  Members by the conduct described extensively herein.

116.  Defendant used false advertising, marketing, and misrepresentations to obtain a monopoly over the marketplace, and colluded to drive prices up in favor of their percentage share of the marketplace, in violation of California Business and Professions Code Section 17500, et seq.   Had Defendant not falsely advertised, marketed or misrepresented in the course of their scheme and collusion, Plaintiff and Class Members would not have been deprived of the benefit of an unfettered marketplace, causing them to lose numerous customers. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

117.  These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 et seq.

118.  Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## COUNT V:

## VIOLATION OF THE CARTWRIGHT ACT, BUSINESS & PROFESSIONS CODE SECTION 16720

119.  Plaintiff realleges and incorporates all paragraphs mentioned herein, by reference.

120.  Defendant's agreement, conspiracy, and contract, and trust, was carried out and performed in the State of California, and Defendants' conduct in California affected natural persons, such as Plaintiff and other consumers and competitors.

121.   Since at least 2018 and continuing through and including June 2019, and continuing, Defendants and co-conspirators entered into an agreement and engaged in conduct for the sole purpose of forming an unlawful trust restraining trade in violation of Section 16720 of the California Business and Professions Code.

122.   These violations of Section 16720 of the California Business and Professions Code consisted, but are not limited to, conduct and agreement among the Defendants and co-conspirators to create and engage in a trust that had the sole purpose of unlawfully restraining trade and creating restrictions on trade in the arena of online traffic school.

123.   For purposes of effectuating the unlawful agreement and forming the unlawful trust, the Defendants agreed to;

   a. Carrying out a policy by which Defendants create duplicate and fake traffic schools, and apply to add them to the DMV's list, in order to flood the marketplace with these duplicate/fake traffic schools to drive consumers to the same few owners/operators.

   b. Utilizing the same websites, business addresses, owners, and operators to create these fake/duplicate schools, which are all driving consumers to the same ultimate online hub;

   c. Penalizing consumers by colluding with each of the other Defendants to flood the marketplace with these "new" fake/duplicate traffic schools at the same time, to drive consumers away from finding a more inexpensive product;

   d. Penalizing consumers by colluding with each of the other Defendants to raise prices of online traffic school at the same time, to prevent consumers from accessing or finding a more inexpensive product;

124.   The effect of the unlawful trust, among others, is:

     a. Suppressed competition between Defendants and Plaintiff and other competitors, for consumers seeking online traffic schools;

     b. Resulted in loss of customers and profits to Plaintiff and other competitors, due to the unlawful nature of the scheme;

     c. Unfairly restricted the choice of consumers in the marketplace to a select few owners/operators who have all colluded to increase prices

125.   As a direct and proximate result of Defendants' conduct and violation of Section 16720 of the Business & Professions Code, natural persons residing in the State of California were injured in their business and property in that they were deprived of competition between companies and denied the ability to shop in an unfettered marketplace for a lower priced traffic school option.

126.   Plaintiff brings this claim pursuant to Section 16720 of the California Business & Professions Code, and injunctive relief and the costs of suit, including reasonable attorneys' fees.

## **TRIAL BY JURY**

127.   Plaintiff requests a trial by jury for all claims thereby triable pursuant to his rights under the Seventh Amendment to the United States Constitution.

## **PRAYER FOR RELIEF**

     a. That the Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Class;

     b. Finding that the Defendants, and each of them, engaged in unlawful anticompetitive conduct in violation of Sections 1 and 2

of the Sherman Act (15 U.S.C. § 1-2), and Section 17200 of the Cal. Bus. & Prof. Code.

c.   An Order directing the termination of the anticompetitive conduct and injunctive relief that restores competition to the markets at issue, including but not limited to restoring Plaintiff to the position it would have occupied but for Defendants' exclusionary conduct;

d.   Damages (including lost profits), in an amount to be determined at trial;

e.   Treble damages (including lost profits), in an amount to be determined at trial;

f.   Plaintiff's costs of suit herein, including attorney's fees incurred;

g.   Punitive damages;

h.   Restitutionary Relief;

i.   Such other relief as may be just and proper.


Respectfully submitted this 28th day of June, 2019.

By:   /s/ Todd M. Friedman, Esq.

Todd M. Friedman, Esq.
Law Offices of Todd M. Friedman, P.C.
Attorney for Plaintiff